**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 14, 2024**

# In the Court of Appeals of Georgia

A23A1463. FUN SPOT AMERICA OF ATLANTA, INC. v. JOHNSON.

RICKMAN, Judge.

In this personal injury action, Herman Johnson alleged that he was injured as a result of negligence on the part of Fun Spot America of Atlanta, Inc., a theme park, when another patron crashed into the back of his go-kart as he prepared to exit the course. Fun Spot filed a motion for summary judgment based, in part, on the doctrine of assumption of the risk, which the trial court denied. We granted Fun Spot's application for interlocutory review in order to determine whether the trial court erred by denying its motion for summary judgment. Because we conclude that Johnson assumed the risk of his injuries, we reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Bowden v. Medical Center, Inc.*, 309 Ga. 188, 199 (2) (a) (845 SE2d 555) (2020). "A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." (Citation and punctuation omitted.) Id. If the defendant does so, the plaintiff "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." (Citation and punctuation omitted.) *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 819 (3) (a) (670 SE2d 469) (2008). "[A]lthough the plaintiff is entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative." (Citation and punctuation omitted.) *Mannion & Mannion, Inc. v. Mendez*, 355 Ga. App. 28, 31 (842 SE2d 334) (2020).

So viewed, the record shows that in August 2019, Johnson was celebrating his birthday at Fun Spot. Johnson had visited Fun Spot previously, and he had ridden a

go-kart prior to his August 2019 visit. On the day in question, Johnson rode the go-kart course once without incident. During his first ride, there were approximately seven or eight other go-karts on the course and Johnson observed that the drivers would occasionally bump each other. At the conclusion of the ride, power to the go-karts decreased and eventually stopped as a Fun Spot employee directed the go-kart drivers into the "pit," which consisted of two single-file go-kart lanes. The drivers were instructed to remain in their go-karts until they were told by an employee to get up and exit the ride.

Johnson returned to the go-kart course to ride it a second time. At the conclusion of that ride, Johnson pulled his go-kart into one of the single-file lanes of the pit, as directed by a Fun Spot employee. After he parked his go-kart and was preparing to exit the ride,[1] a different patron "violently rear-ended" his go-kart with hers, allegedly causing him injuries.

Johnson filed a personal injury action against Fun Spot, alleging that Fun Spot and its employees failed to properly maintain and operate the go-kart ride, and seeking

---

[1] Johnson testified during his deposition that he had already unbuckled his seatbelt and was stepping out of the go-kart when his cart was hit; his companion, however, testified that Johnson had still been buckled in his seatbelt at the time of the collision.

general, special, and punitive damages. Fun Spot answered the complaint and asserted assumption of the risk as an affirmative defense. Following discovery, Fun Spot filed a motion for summary judgment, contending that Johnson's claims of negligence amounted to nothing but speculation and, regardless, that Johnson's claims were barred by his assumption of the risk. Johnson opposed the motion and without citing to any record evidence beyond the occurrence of the incident itself, asserted that Fun Spot negligently failed to properly reduce the electricity of the go-kart being driven by the collision-causing patron, which resulted in her inability to stop. The trial court denied Fun Spot's motion for summary judgment, we granted its application for interlocutory review, and this appeal followed.

Fun Spot contends, in part, that the trial court erred by denying its motion for summary judgment because Johnson assumed the risk of his injuries by choosing to ride the go-kart. We agree.

"The affirmative defense of assumption of the risk bars recovery when it is established that a plaintiff, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." (Citation and punctuation omitted.) *Jekyll Island*

4

*State Park Auth. v. Machurick*, 250 Ga. App. 700, 700 (1) (552 SE2d 94) (2001). In order to prove this defense, Fun Spot must establish that Johnson (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Id. Although ordinarily a jury question, summary judgment is appropriate when "plain, palpable, and indisputable evidence demonstrates that the plaintiff assumed the risk of [his] injuries." (Citation and punctuation omitted.) Id. at 700-701 (1). And significantly, "Georgia courts have addressed the issue of assumption of risk in connection with amusement park rides on a number of occasions and have held that a person who uses such rides assumes the risk of injury arising as a result of the natural and obvious hazards necessary to the purpose of the device." (Citation and punctuation omitted.) *Jekyll Island State Park Auth.*, 250 Ga. App. at 701 (1); see also *Woolbright v. Six Flags Over Ga.*, 172 Ga. App. 41, 41-42 (1) (321 SE2d 787) (1984) ("A person who rides or uses an amusement device assumes the hazards naturally and obviously arising from the proper use and operation of the device, such as the hazards inherent in the operation of a miniature car or scooter, if it is properly designed, constructed, and maintained.") (citation and punctuation omitted).

Here, the undisputed evidence shows that Johnson was familiar with and had previously ridden on the go-kart course, was aware that the go-carts were driver operated, and knew that the go-karts occasionally made contact with one another during the ride. In addition, there was a Road Course Rules sign posted at the entrance of the go-kart area that Johnson admitted to having read before entering the course. The sign included the following instructions: "No Bumping - No Reckless Driving;" "Drive slowly when leaving or entering pit area;" and "RIDE AT YOUR OWN RISK." Additionally, an audio recording was played in the waiting area of the go-kart course that included the following directives: avoid contact with slower or stopped traffic; no bumping, swerving or hitting the rail; slow down and enter loading area with caution; driver controlled ride – ride at your own risk; and drive safely.[2] A large sign above the pit area directed drivers to "SLOW DOWN" as they entered. And finally, the back of each individual go-kart included a sign that said "NO BUMPING!".

---

[2] Although Johnson and his companion stated that they could not recall whether an audio recording was playing, Fun Spot's Director of Operations submitted an affidavit averring that it was Fun Spot's general and customary practice to play the audio recording when Fun Spot was open to customers and that he was not aware of any instance on the day in question that the recording would not have been playing.

Putting aside the fact that Johnson failed to present any evidence beyond speculation regarding the cause of the collision, the record evidence is sufficient to demonstrate that Johnson assumed the risks associated with the go-kart course, including that other patrons may bump his go-kart from behind, whether in the pit or not. See *Abee v. Stone Mountain Mem. Assn.*, 252 Ga. 465, 465 (314 SE2d 444) (1984) (noting that danger of water slide "was patent and obvious to anyone familiar with the ride"); *Atlanta Funtown, Inc. v. Crouch*, 114 Ga. App. 702, 712-713 (3) (152 SE2d 583) (1966) (explaining that "forces generated by the changes of speed and direction" on roller coaster "were not obscure dangers but were ordinary, necessary and inherent in the device itself and were part of the thrill bargained for"); see also *Fowler v. Alpharetta Family Skate Center*, 268 Ga. App. 329, 332 (3) (601 SE2d 818) (2004) (affirming grant of summary judgment to skate center because plaintiff, who was an experienced skater, knew that he might collide with another skater or fall and therefore assumed the risk of injury). It follows that the trial court erred by denying Fun Spot's motion for summary judgment.

*Judgment reversed. Dillard, P. J., and Pipkin, J., concur.*