26231.   ATLANTA PROCESSING COMPANY v. BROWN.

ARGUED DECEMBER 15, 1970—DECIDED JANUARY 7, 1971—
REHEARING DENIED JANUARY 21, 1971.

*Hodges & Oliver, G. Robert Oliver,* for appellant.

*H. Eugene Brown, District Attorney,* for appellee.

GRICE, Justice. A judgment declaring a public nuisance and enjoining its continuance is the basis of this appeal.

Litigation began in 1966 when Albert B. Wallace, who was then the Solicitor General of the Clayton Judicial Circuit, filed in the Superior Court of Clayton County in and for certain citizens of that county, a complaint against Atlanta Processing Company. Subsequently, his successor, H. Eugene Brown, continued in the litigation.

The complaint, insofar as necessary to recite here, made the allegations which follow.

It stated that the defendant has since March, 1966, operated five days each week its plant which involves the processing of animal material, manufacturing it into bone meal and other by-products. Thirty-eight named persons live and work in the immediate vicinity. In the operation of the plant, gases, fumes and smoke are emitted each day which have a strong, pungent and nauseating odor. The odor is so strong, so insistent and permeates the atmosphere so completely during operation, that it consciously interferes with the sleep of those in the community, destroys their appetites and makes them very irritable, upset and nervous. The odor offends customers of commercial establishments on a named highway in the vicinity of the plant, and also offends, annoys and irritates individuals at the Atlanta Army Depot. The operation commences in early morning and the odor therefrom continues until at least 10 p.m.

The complaint made these additional allegations. The fumes, gases and smoke containing this odor have adversely affected church services in the community and have generally interfered

with community activities. Many of the individuals named herein are married and their families have been similarly affected by the offensive smell emanating from the plant. On account of these noxious and offensive smells originating from it, and their penetration into the homes and other structures occupied by the general public in that area, suc homes and buildings have been rendered unwholesome and uninhabitable during the plant's operation. Because of the effect of this odor and smell, the health of all persons coming within the vicinity of it has been injured.

The complaint further averred that the nuisance is continuing, that the only adequate remedy at law is to enjoin the defendant from operating it in such a way as to pollute the air with such an odor and smell as to make habitation of the vicinity impossible, unhealthy and unwholesome.

The prayers of the complaint included relief that operation of the plant in the manner aforesaid be decreed a public nuisance and as such be abated by the court, injunctive relief against operating it in such a way as to permit strong, offensive odors to emit therefrom in such volume and intensity as to interfere with the public enjoyment and habitation of the surrounding premises.

To the complaint the defendant filed an answer denying the essential allegations.

The defendant also filed two motions to dismiss this complaint. These are almost idenitcal and, in substance, allege as follows. The complaint seeks an injunction against the defendant in operation of its business and a declaration of a public nuisance under the following laws of Georgia, to wit: "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals" (*Code* § 72-102); and, "Private citizens may not generally interfere to have a public nuisance enjoined, but the petition must proceed for the public on information filed by the solicitor general of the circuit. A public nuisance may be abated on the application of any citizen specially injured" (*Code* § 72-202). The motions urge that these laws are unconstitutional and in violation of the due process provisions of

the Georgia and the United States Constitutions (*Code Ann.* § 2-103 and *Code* § 1-815) in that they are so vague and indefinite that men of common intelligence must necessarily differ as to their application, and that as they relate to public nuisances they are so vague and indefinite as to be unenforceable and do not give a sufficient guide to men of common intelligence.

The trial court denied both motions to dismiss. Upon the trial considerable testamentary and documentary evidence was introduced which will be referred to later.

Pursuant to the jury's verdict for the plaintiff, the trial court entered a judgment which, in essential part, recited that the defendant be declared "a public nuisance in the manner and method of operation as alleged in plaintiff's petition"; and "is permanently enjoined against and restrained from operating its plant facilities in such manner to cause the emission of gases, fumes and smoke containing noxious and offensive odors in such volume and intensity so as to interfere with the public enjoyment and habitation of the surrounding premises."

Thereupon, the defendant filed a motion for new trial on the general grounds, and later amended it to include nine special grounds. Since the grounds of this motion are also stated in the enumeration of errors, they will not be recited here. The motion for new trial was denied on each and every ground.

Upon appeal to this court the defendant filed 13 enumerations of error.

■ We deal first with those complaining of the denial of the defendant's two motions to dismiss the complaint. These make the same basic contention, that the complaint fails to state a claim upon which relief can be granted.

(a) The complaint is not subject to dismissal because it is predicated upon *Code* §§ 72-102 and 72-202, supra. These provisions have been the law of this State since 1833 and, to our knowledge, have never before been constitutionally questioned. We do not regard them as vague and indefinite and therefore unconstitutional, as contended here.

(b) The allegations of the complaint as to the nature of the plant operations, which are summarized above, are sufficient to constitute a nuisance as defined in *Code* § 72-101, and therefore a

public nuisance as contemplated by *Code* §§ 72-102 and 72-202.

■ There is no merit in either of the enumerations which complain of certain questions asked the witnesses and the answers in response to them.

(a) The first of these relates to a question asked an administrative officer of the State Health Department. The question in substance was whether that department would usually institute another suit when one was already filed regarding the same alleged offenses. The witness first answered that he was not a lawyer and did not know. Upon further questioning he replied that he did not think it would. The only objection by the defendant was that the witness first answered the question by stating that he was not a lawyer and that such answer was quite clear. These questions, as we view them, did not call for a legal conclusion but merely concerned the policies of the State Health Department. There is no merit in this enumeration.

(b) The second enumeration in this category concerns questions asked by the plaintiff of one of its witnesses as to why she moved to McDonough. The witness replied that it was "because of the stink." We cannot agree that this was irrelevant and immaterial. It was germane to the issue of whether the operation of the defendant's plant at Conley was a public nuisance, and therefore proper.

(c) The final complaint of this nature is with reference to a question which the trial judge asked a plaintiff's witness: "If no odor came from it, you wouldn't object to it?" The witness replied, "I wouldn't object to it if I didn't smell it." This question was not improper. This witness had previously testified that the defendant's plant was very close to her yard and that the wind blew the scent there. This question was likewise relevant to the issue of whether there was a public nuisance. Furthermore, no objection whatever was made to this question or its answer.

■ The trial court did not err in permitting the jury to view the defendant's premises under the instructions given.

The court authorized the sheriff to take the jury to the plant, to permit them to walk around the outside of the plant and to look through its doors and windows, but not to walk through or enter the plant, or to talk with anyone.

The defendant contends that the jury was unduly restricted to the property of the defendant. It urges that the jury should have been permitted to visit the vicinity where the witnesses said they smelled the odors since its liability would not be for odors on its property, but for odors beyond its property. The plaintiff had previously insisted that the jury be permitted to go in the plant itself. This was a matter within the sound discretion of the trial court and no abuse appears here. See in this connection, *Moore v. Macon Coca-Cola Bottling Co.*, 180 Ga. 335 (2) (178 SE 711).

■ The trial court did not err in charging the jury as to the provisions of *Code* §§ 72-102 and 72-202.

(a) These provisions are not unconstitutional for the reason assigned. The ruling made in Division 1 (a) controls here.

(b) Such provisions were not unadjusted to the issues as contended. It is urged that the charge was not proper because the evidence showed that all persons coming within the sphere of the plant's operations were not affected by the odors complained of. This position cannot be maintained in view of the ruling in Division 6 (b) infra of this opinion.

■ The trial court properly refused to give in charge to the jury two requests.

(a) The first of these was with reference to the legal consequences of pollution of air.

It was as follows: " . . . [E]very person has a natural right to have the air difused over his premises in a natural state. However, if this rule were literally applied, its application would seriously disturb business, commerce, and society itself. Therefore, by air in its natural state and free from artificial impurities is meant pure air consistent with the locality and nature of the community. The use of tallow and bone meal are useful, necessary items in today's society. In proportion, as population and business expand, impurities thrown into the air are increased. The pollution of the air actual and necessary to the reasonable enjoyment of life are [sic] indispensable to the progress of society, is not actionable and is not, in itself, grounds for having a business or the operation thereof declared to be a nuisance."

This language, with some adaptation and addition, is a partial statement of the principle in *Holman v. Athens Empire Laundry*

*Co.,* 149 Ga. 345, 350 (100 SE 207, 6 ALR 1564), and is quoted in *Poultryland, Inc. v. Anderson,* 200 Ga. 549, 557 (37 SE2d 785).

However, the language of the request omits an important essential as to the manner of exercising this right. Immediately following the words "is not actionable," page 350 of the *Holman* case, the court also said, "but the right (and such it must be conceded) must not be exercised in an unreasonable manner so as to inflict injury upon another unnecessarily." Also, the third headnote of the *Holman* case, in setting forth the elements of the principle involved here states that, "(c) The privilege of use incident to the right of property must not be exercised in an unreasonable manner, so as to inflict injury upon another unnecessarily." See also 39 AmJur 335, Nuisances, § 53.

In view of this incompleteness in stating the principle sought to be charged the trial court properly refused to give the request.

(b) The second request related to the scope of effect upon individuals necessary to be a public nuisance. The language of this request, insofar as necessary to recite here, was that " . . . a public nuisance is one that wrongfully affects rights to which every citizen is entitled . . . [If] you should find from the evidence that the operation of the defendant's business is one which does not wrongfully affect the rights to which every citizen is entitled then the defendant's business operation would not be a public nuisance."

Nowhere in this request was the effect confined to damages to "all persons who come within the sphere of its operation," as provided in *Code* § 72-102, supra. Insofar as this request was concerned, to be a public nuisance it would have been necessary that the operation of the defendant's business affect not just the Conley area, but *everyone everywhere.* Since this request was not a correct statement of the law, the refusal to give it was not error.

■ There was evidence to sustain the verdict in favor of the plaintiff, and therefore the trial court did not err in denying the defendant's motion for directed verdict and the general grounds of its motion for a new trial.

The undisputed evidence was that since early 1966 the defendant had been operating a processing plant in the Conley community of Clayton County. This involved the collection and bringing to its plant quantities of meat and bone and processing them into

tallow and bone meal.

However, there was a conflict in the evidence as to the effect of the plant's operation upon the community.

The plaintiff produced approximately 25 witnesses who lived within a radius of roughly one mile and who testified that the plant produced odors which had adverse effects on them, their families and businesses. According to these witnesses, the odors commenced when the plant was established there, were frequent, and occurred when the plant was in operation. They said that they were apparent much of the 24-hour period, especially at night and with humid atmosphere. They swore that these odors were intense, permeating their yards, the inside of their homes and their clothing. They gave various descriptions, referring to them as unpleasant, obnoxious, foul, sickening, offensive and putrid. Several described them as smelling like a dead dog or other animal that was being cooked and that they kept them from eating and sleeping. From these witnesses there was positive and unequivocal testimony that these odors came from the plant of the defendant. While none of these witnesses had ever been on the plant property, they either lived or worked nearby. Several resided quite close to it.

However, the defendant offered evidence which was to the contrary. Several persons who either lived or worked in the area testified that they had not observed any such odors at any time. Several swore that they had smelled odors but that they came from other sources, namely, a county sewage disposal plant which they said was overloaded, a stream related to the sewage disposal plant which abutted the defendant's property, and a business which burned junked cars and automobile tires. Experts testified that their tests of the odors in this area showed that they did not emanate from the plant, and that it put out no odors beyond its property. The defendant's president testified as to its operations, and several changes made so as to eliminate any emission of odors from the property. The evidence also showed that in 1966, after inspections were made of the plant's operations by the Health Department, certain suggested improvements were complied with.

(a) In view of the foregoing divergent testimony with reference as to what occurred, we cannot say that a verdict for the plaintiff

was not authorized. The evidence was in sharp conflict, and therefore the jury's finding cannot be set aside.

(b) The evidence meets the requirement of *Code* § 72-102, that "a public nuisance is one which damages all persons who come within the sphere of its operations. . ."

This language is not used in the sense that *every person* in the area must have been actually hurt or injured in order to show a public nuisance. That would be an unreasonable construction of the statute. It is sufficient if it injures those of the public who may actually come in *contact* with it. *Dean v. State,* 151 Ga. 371, 374 (106 SE 792, 40 ALR 1132); 39 AmJur 288, Nuisances, § 10; 66 CJS 730-733, Nuisances, § 2.

A public nuisance exists if the act complained of affects rights which are common to all within a particular area. See *Cox v. DeJarnette,* 104 Ga. App. 664, 676 (123 SE2d 16).

Here, the common, or public, right of *all* persons in the area related to clean air.

The evidence was ample to show that this right was violated, and hence a public nuisance existed.

We find no error in any of the rulings complained of.

*Judgment affirmed. All the Justices concur.*